UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: __24-20488-CR-HUCK/LOUIS__

18 U.S.C. § 1343
15 U.S.C. § 645(a)
18 U.S.C. § 981(a)(1)(C)

FILED BY ___AT___ D.C.

Nov 7, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

UNITED STATES OF AMERICA

vs.

SHAWANA ALLEN,

      Defendant.
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

*The Small Business Administration*

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

### *The Paycheck Protection Program*

3.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic. One source of relief that the CARES Act provided was the Paycheck Protection Program ("PPP"), which authorized forgivable loans to small businesses for job retention and certain other expenses.

4.  The SBA promulgated regulations concerning eligibility for a PPP loan. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation on February 15, 2020, and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. Payments to independent contractors are typically reported to the Internal Revenue Service ("IRS") on a "Form 1099-MISC." In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

5.  In addition, a business applying for a PPP loan was required to provide documentation showing its payroll expenses. This payroll information was material to the application because, pursuant to statutory requirements and implementing regulations, the amount of the loan that typically could be approved was a function of the applicant's historical payroll

2

costs, consisting of compensation to its employees whose principal place of residence was the United States, subject to certain exclusions.

6. Individuals who operated a business under a "sole proprietorship" business structure were eligible for a PPP loan. To qualify for such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship. Sole proprietorships typically report their income and expenses yearly to the IRS on a "Form 1040, Schedule C." As with other PPP loans, this information and supporting documentation was used to calculate the amount of money the individual was entitled to receive under the PPP. The maximum PPP loan amount for a sole proprietor with no employees was $20,833.

7. PPP loan applications were processed by participating lenders and third-party loan processors. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, including by electronic transfer through the Automated Clearing House system. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. After the lender funded the PPP loan to the borrower, the lender submitted disbursement details into the SBA E-Tran system, with servers located in Sterling, VA. The SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the PPP processing fee to the lender through the Financial Management System to the Treasury. The primary server for the Financial Management System was in Sterling, VA. The PPP processing fee varied depending on the amount of the loan. Once created, the payment files were then transmitted via wire to the U.S. Treasury disbursing office in Kansas City, Missouri,

which, in turn, sent instructions for payment of funds to the Federal Reserve Bank Automated Clearing House processing site in East Rutherford, New Jersey.

9. The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments for the business. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, or jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the borrower utilized 60% of the loan in the 24 weeks post-disbursement toward payroll costs and utilized the remaining 40% on qualified expense items (e.g., mortgage, rent, and utilities).

11. Applying for PPP loan forgiveness was a separate process that required additional affirmations that the applicant satisfied the eligibility for PPP loan forgiveness. Whatever portion of the PPP loan was not forgiven was serviced as a loan.

### *The Economic Injury Disaster Loan Program*

12. Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program administered by the SBA, the Economic Injury Disaster Loan ("EIDL") program, to provide loans up to $150,000, and additional advance funds of up to $10,000, for small businesses experiencing a temporary loss of revenue due to the pandemic.

13. To qualify for an EIDL authorized by the CARES Act, applicants had to be: (1) a business, cooperative, or agricultural enterprise with 500 or fewer employees, a faith-based organization, a private non-profit, a sole proprietorship or an independent contractor; (2)

physically located in the United States or a designated territory; and (3) have suffered working capital losses due to the COVID-19 pandemic.

14. EIDL loan amounts were based off a rough calculation of the applicant's net revenues over the six months prior to January 31, 2020. The rough calculation took the difference between the previous annual gross revenues and the previous annual cost of goods sold. That number was divided by two to determine the approved loan amount, up to $150,000.

15. EIDL advance amounts were based off the business's reported number of employees as of January 31, 2020. The SBA provided $1,000 in EIDL advance funds for each employee on the applicant's payroll, up to the maximum amount of $10,000.

16. EIDL proceeds could have been used to pay fixed debts, payroll, accounts payable, and other bills of the business that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits, or for the expansion of a business.

17. Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury, and applicants applied for EIDL funds directly through the SBA via an online portal and application. The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including information about the gross revenues and cost of goods sold for the business prior to January 31, 2020. Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or misrepresentations to the SBA, or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

18. EIDL applications were received in and processed using computer servers located in the states of Iowa, Virginia, and Washington. EIDL disbursement payments were initiated by the SBA using computer servers located in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

19. The SBA also made available Targeted EIDL Advances to provided funds of up to $10,000 to applicants who were in a low-income community, could demonstrate more than 30% reduction in revenue during an eight-week period beginning on March 2, 2020, or later, and had 300 or fewer employees.

20. The SBA also made Supplemental Targeted Advances available that provided a supplemental payment of $5,000 that did not have to be repaid. The combined amount of the Supplemental Targeted Advance ($5,000) with any previously received EIDL Advance or Targeted EIDL Advance ($10,000) could not exceed $15,000. Applicants had to be in a low-income community, prove more than a 50% economic loss during an eight-week period beginning on March 2, 2020, or later, and had 10 or fewer employees.

### The Defendant and Relevant Entities

21. Defendant **SHAWANA ALLEN** was a resident of Miami-Dade County, Florida, and a Detention Deputy with the Broward Sheriff's Office.

22. Lender 1 was a participating lender in the PPP and was located in Utah.

23. Loan Processor 1 was a third-party loan processor that processed PPP loan applications for Lender 1, among other participating PPP lenders.

## COUNTS 1–3
## Wire Fraud
## (18 U.S.C. § 1343)

24. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

25. From in or around March 2021, through in or around December 2021, the exact dates being unknown to the Grand Jury, in Miami-Dade County and Broward County, in the Southern District of Florida, the defendant,

**SHAWANA ALLEN,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE SCHEME AND ARTIFICE

26. It was the purpose of the scheme and artifice for the defendant to unlawfully enrich herself by, among other things: (a) making false statements to obtain a PPP loan and forgiveness of such PPP loan from the SBA and its lender; (b) submitting and causing the submission of a PPP loan application that contained false and fraudulent information; (c) causing the disbursement of a false and fraudulent PPP loan; (d) submitting and causing the submission of a PPP loan forgiveness application that contained false and fraudulent information; and (e) making false statements to the SBA on EIDL loan applications.

## THE SCHEME AND ARTIFICE

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice included, among others, the following:

27. **SHAWANA ALLEN** submitted and caused the submission of an application for a PPP loan to Loan Processor 1 and Lender 1, which contained materially false and fraudulent information as to the borrower's gross income, among other things.

28. **SHAWANA ALLEN** submitted and caused the submission of materially false and fraudulent information and documentation in support of the application for the PPP loan, including an Internal Revenue Service tax form Schedule C containing false information, among other things.

29. As a result of the false and fraudulent PPP loan application submitted as part of this scheme, on or about March 17, 2021, Lender 1 approved PPP loan number 7312858609 for **SHAWANA ALLEN**, and disbursed the loan proceeds in the approximate amount of $12,398 to **SHAWANA ALLEN** at JPMorgan Chase account number ending in 5999 in the name of **SHAWANA ALLEN.**

30. In furtherance of the scheme and artifice, **SHAWANA ALLEN** submitted and caused the submission of materially false and fraudulent information to the SBA and Lender 1 to cause and attempt to cause the forgiveness of PPP loan number 7312858609, to which the defendant was not entitled.

31. **SHAWANA ALLEN** also submitted and caused the submission of materially false and fraudulent applications for EIDL advances and loans to the SBA from in or about March 2020 to about November 2021, including EIDL applications that contained materially false and fraudulent information as to (1) the applicant business's gross revenues, cost of goods sold, and

8

(2) the applicant business's number of employees as of January 31, 2020.

33. **SHAWANA ALLEN** used the ill-gotten loan proceeds to enrich herself and not for qualified expenses under the PPP and the EIDL program.

<b><u>USE OF WIRES</u></b>

33. On or about the dates and for the defendant specified as to each count below, for the purpose of executing the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, as described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 1 | March 25, 2021 | Disbursement of SBA loan number 7312858609 from Lender 1 in the approximate amount of $12,398 by wire transfer to JPMorgan Chase account number ending in 5999. |
| 2 | August 26, 2021 | Disbursement of SBA EIDL Advance from SBA in the approximate amount of $10,000 by Automated Clearing House (ACH) transfer to JPMorgan Chase account number ending 1687. |
| 3 | August 26, 2021 | Disbursement of SBA EIDL Supplemental Advance from SBA in the approximate amount of $5,000 by Automated Clearing House (ACH) transfer to JPMorgan Chase account number ending 1687. |

In violation of Title 18, United States Code, Section 1343.

<b><u>COUNT 4</u></b><br><b>False Statement to the SBA</b><br><b>(15 U.S.C. § 645(a))</b>

34. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

35. On or about March 17, 2021, in Miami-Dade County and Broward County, in the

9

Southern District of Florida, the defendant,

**SHAWANA ALLEN,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, an SBA Form 2483-C Paycheck Protection Program Borrower Application Form for Schedule C Filers Using Gross Income, which false statement included, among other things, that the Total Amount of Gross Income for 2019 was "$59,512," in violation of Title 15, United States Code, Section 645(a), and Title 18, United States Code, Section 2.

### COUNT 5
### False Statement to the SBA
### (15 U.S.C. § 645(a))

36. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

37. On or about August 8, 2021, in Miami-Dade County and Broward County, in the Southern District of Florida, the defendant,

**SHAWANA ALLEN,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, an SBA PPP loan forgiveness application form, which false statement included, among other things, that the loan funds were used in accordance with PPP guidelines, in violation of Title 15, United States Code, Section 645(a), and Title 18, United States Code, Section 2.

### COUNT 6
### False Statement to the SBA
### (15 U.S.C. § 645(a))

38. The General Allegations section of this Indictment is re-alleged and incorporated

by reference as though fully set forth herein.

39. On or about March 30, 2020, and August 10, 2021, in Miami-Dade County and Broward County, in the Southern District of Florida, the defendant,

**SHAWANA ALLEN,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, an SBA EIDL Application # 3300411762, which false statement included, among other things, that the Chanel Collections LLC had $25,000 in gross revenues in the twelve months preceding January 31, 2020, in violation of Title 15, United States Code, Section 645(a), and Title 18, United States Code, Section 2.

## COUNT 7
### False Statement to the SBA
### (15 U.S.C. § 645(a))

40. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

41. On or about July 7, 2020, in Miami-Dade County and Broward County, in the Southern District of Florida, the defendant,

**SHAWANA ALLEN,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, an SBA EIDL Application # 3309252471, which false statement included, among other things, that the Chanel Collections LLC had 10 employees, in violation of Title 15, United States Code, Section 645(a), and Title 18, United States Code, Section 2.

## COUNT 8
### False Statement to the SBA
### (15 U.S.C. § 645(a))

42. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

43. On or about October 22, 2020, in Miami-Dade County and Broward County, in the Southern District of Florida, the defendant,

**SHAWANA ALLEN,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, an SBA EIDL Application # 3315049525, which false statement included, among other things, that the Chanel Collections LLC had $25,000 in gross revenues in 2019 and $10,000 in costs of goods sold, in violation of Title 15, United States Code, Section 645(a), and Title 18, United States Code, Section 2.

## COUNT 9
### False Statement to the SBA
### (15 U.S.C. § 645(a))

44. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

45. On or about September 12, 2021, in Miami-Dade County and Broward County, in the Southern District of Florida, the defendant,

**SHAWANA ALLEN,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, an SBA EIDL Application # 3323615210, which false statement included, among other things, that the

Chanel Collections LLC had $52,141 in gross revenues in 2019, in violation of Title 15, United States Code, Section 645(a), and Title 18, United States Code, Section 2.

## COUNT 10
### False Statement to the SBA
### (15 U.S.C. § 645(a))

46. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

47. On or about November 2, 2021, in Miami-Dade County and Broward County, in the Southern District of Florida, the defendant,

**SHAWANA ALLEN,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, SBA EIDL Application # 3324526566, which false statement included, among other things, that the defendant's company, Chanel Collections LLC, had $50,000 in gross revenues in 2019 and $20,000 costs of goods sold and $25,500 in gross revenues in 2020 and $20,000 costs of goods sold, in violation of Title 15, United States Code, Section 645(a), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **SHAWANA ALLEN,** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title

18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____ BRUCE O. BROWN
FOR MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
LATOYA C. BROWN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

SHAWANA ALLEN,

_____/
                Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
    ☒ Miami    ☐ Key West    ☐ FTP
    ☐ FTL       ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) __No__
    List language and/or dialect: _____
4. This case will take __5__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

    (Check only one)        (Check only one)
    I  ☒ 0 to 5 days      ☐ Petty
    II  ☐ 6 to 10 days     ☐ Minor
    III ☐ 11 to 20 days    ☐ Misdemeanor
    IV ☐ 21 to 60 days    ☒ Felony
    V  ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) __No__
    If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) __No__
    If yes, _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) __No__
    If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) __No__
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Mills Maynard)? (Yes or No) __No__
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) __No__
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? __No__
16. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? __No__

By: _____
LATOYA C. BROWN
Assistant United States Attorney
FL Bar No.        105768

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** SHAWANA ALLEN

**Case No:** _____

Counts #: 1–3

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment: 20 years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 3 years**
* **Max. Fine: $250,000**

Counts #: 4–10:

False Statements to SBA

Title 15, United States Code, Section 645(a)
* **Max. Term of Imprisonment: 2 years**
* **Mandatory Min. Term of Imprisonment (if applicable): N/A**
* **Max. Supervised Release: 1 year**
* **Max. Fine: $5,000**

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.